UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA J. MURPHY, | ) |
| Plaintiff, | ) |
| v. | ) No. 08 C 4520 |
| DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS; COUNTY OF COOK, ILLINOIS, | ) Judge Rebecca R. Pallmeyer |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Barbara Murphy was terminated by her employer, the Clerk of the Circuit Court of Cook County, for excessive absences. Plaintiff had been granted intermittent leave under the Family and Medical Leave Act ("FMLA") shortly before she was terminated, and she believes that some of her absences should have been excused as covered by her leave status. In this lawsuit, Plaintiff alleges that Defendants Cook County and Dorothy Brown, Clerk of the Circuit Court of Cook County, violated her rights by denying an earlier FMLA application, by terminating her for absences that constituted FMLA leave, and by retaliating against her for requesting leave. Defendants move for summary judgment. For the reasons that follow, their motion is granted as to the denial of the earlier application and as to Plaintiff's retaliation claim. With respect to the claim that by terminating her, Defendants interfered with her right to take intermittent FMLA leave, summary judgment is denied.

## FACTUAL BACKGROUND

Before summarizing the facts, the court notes that Defendants have objected to several of the paragraphs in Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Undisputed Facts and in Plaintiff's Response to Defendants' Local Rule 56.1(a)(3) Statement of Undisputed Facts. (Defs' Reply Br. at 1-3.) The paragraphs in Plaintiff's Response to which Defendants object fall into two

categories: responses that admit the paragraph in question yet provide additional facts, and responses that deny the paragraph in question but provide a nonsupportive citation for the denial. Both sets of objections are sustained. *See Malec v. Sanford*, 191 F.R.D. 581, 583-84 (N.D. Ill. 2000). Defendants' objections to Plaintiff's own Statement of Undisputed Facts will be considered when relevant.

Plaintiff started working for the Clerk of the Circuit Court of Cook County in March of 1993 and became a court clerk in 2000. (Defs' 56.1(a)(3) ¶ 6.) Her most recent assignment was at the Rolling Meadows Courthouse handling a traffic ticket call. (Pl's 56.1(b)(3)(C) ¶ 10.) As a court clerk, Murphy generally performed clerical, recordkeeping, and administrative services for the court. (Defs' 56.1(a)(3) ¶ 7.) Under the Court Clerk's attendance policy, an employee accrues points for attendance violations as follows: 1 point for tardiness, 1 point for leaving early, 2 points for being absent without leave for a full day, 1 point for a half day, and 3 points for an absence where the employee fails to notify management within 2 hours of her scheduled start time. (Defs' Ex. 4.) To give notification of an absence or a tardy, an employee calls a specific number and reports to the Timekeeper. (Pl's 56.1(b)(3)(C) ¶¶ 19-20.) If the employee submits proper documentation, points are not incurred for an absence due to a bona fide emergency such as a car accident or a medical emergency. (Defs' Ex. 4.) Absences for nonemergency medical treatment—outpatient surgery, outpatient medical care at home, or an overnight hospital stay—are also excused if the employee submits proper documentation. (*Id.*) The level of discipline for absences and tardies corresponds to the number of points accumulated in the previous twelve months: for 6-9 points, the employee receives a verbal warning; for 10-12, a written warning; for 13-17, a 1-day suspension without pay; for 18-20, a 3-day suspension without pay; for 21-24, a 5-day suspension without pay; and for 25 or more points, termination. (*Id.*)

Plaintiff's relevant medical history begins in November 2003 when she underwent a hysterectomy and an excision of pelvic inflammatory tissue. (Pl's 56.1(b)(3)(C) ¶ 8.) The

2

inflammation persisted, and Plaintiff underwent two more surgeries in March 2004. (*Id.*) In that same month, Plaintiff applied for and received intermittent FMLA leave, which ran from March 16 until June 1. (*Id.* ¶ 9, Pl's Ex. 8.) Plaintiff was not, however, able to return to work full time after her FMLA leave ended because in the first surgery she underwent in March, her left ureter[1] was mistakenly severed. (Pl's 56.1(b)(3)(C) ¶ 8.) Plaintiff underwent surgery again in June 2004 to repair her severed ureter, but the surgery failed to restore normal urinary function. (*Id.*) Plaintiff then went on disability leave and did not return to work until January 10, 2005. (Defs' 56.1(a)(3) ¶ 12.)

When she returned to work, Plaintiff provided her employer with documentation of her medical situation. (Defs' Ex. 6.) Plaintiff testified that Brett Liebsker, Chief Deputy Clerk for Labor Relations, told her that so long as she submitted documentation for any future absences or tardies, she would not receive points for them.[2] (Murphy Dep., Pl's Ex. 3, at 44-46.) Despite this assurance from Liebsker, however, Plaintiff's absences and tardies in 2005 *were* counted against her. (Defs' 56.1(a)(3) ¶ 13.) Plaintiff testified that during this period she submitted documentation explaining the medical need for some of those absences and tardies. (Pl's 56.1(b)(3)(C) ¶ 36.) In a grievance dated August 4, 2005, Plaintiff complained that the Court Clerk had been counting her absences and tardies against her, writing that "they have been harassing me about points when I have a medical condition." (Defs' Ex. 8.) Plaintiff explained in her grievance that she had been told that

---

[1] The ureter is a tube that deliveries urine from the kidney to the bladder. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 2034 (31st ed. 2007).

[2] Plaintiff states that Liebsker does not remember the conversation, but she offers no citation for that assertion. (Pl's 56.1(b)(3)(C) ¶ 35.) Defendants provide no citation either, but they do not deny Plaintiff's testimony. (Defs' Response to Pl's 56.1(b)(3)(C) ¶ 35.) Instead, Defendants argue that the court cannot consider Plaintiff's testimony because it is hearsay. (*Id.*) Under Federal Rule of Evidence 801(d)(2)(D), though, a statement offered against a party is not hearsay if it is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Contrary to Defendants' argument, there is no requirement that the statement be an admission of wrongdoing. Thus, Plaintiff's testimony on this matter is admissible.

she would not accrue points if she submitted detailed doctors' notes explaining her absences and tardies; she did not say whether she had submitted notes corresponding to every absence and tardy. (*Id.*) She also wrote that she intended to file a new FMLA request even though she knew that she had not worked the 1,250 hours required to be eligible for FMLA leave. (*Id.*)

Plaintiff filed that second FMLA request in September 2005. As she had predicted, it was denied in December 2005 because Plaintiff had not worked a sufficient number of hours to be eligible for FMLA leave under 29 U.S.C. § 2611(2)(A)(ii). (Defs' Ex. 9.) By letter dated December 15, 2005, Ada Etolue, the Court Clerk's Benefits Coordinator and HR Legal Analyst, notified Plaintiff of the denial. (*Id.*) While the request was pending, Plaintiff missed more work and was issued a Personnel Action Report on October 4, 2005 listing the dates of 10 absences and 3 tardies incurred between June and September of 2005. (Defs' Ex. 7.) The Report notes that Plaintiff was to receive a one-day suspension, but Plaintiff asserts (without citation) that she was never actually disciplined. (*Id.*; Pl's Response to Defs' 56.1(a)(3) ¶ 16.) It is undisputed that Plaintiff continued to have attendance problems; between October 2005 and April 2006, she was absent 23 times and tardy 11 times, accruing 71 points, according to another Personnel Action Report issued on April 20, 2006. (Defs' 56.1(a)(3) ¶ 17; Pl's Response to Defs' 56.1(a)(3) ¶ 17; Defs' Ex. 10.) Following that Report, Plaintiff was required to meet with a Clerk's Office supervisor to discuss her violations of the attendance policy. (Defs' 56.1(a)(3) ¶ 18.)

Plaintiff met with Fred Moody, Associate Clerk of General Services, on May 4, 2006. (Defs' 56.1(a)(3) ¶ 19.) Moody told Plaintiff that her high number of absences and tardies could lead to termination. (*Id.*) Plaintiff testified that she was "shocked" to discover she had accumulated points for absences she believed were being excused for medical reasons.[3] (Pl's 56.1(b)(3)(C) ¶ 40.) At

---

[3] Defendants challenge Plaintiff's claim that she was shocked; they note that the grievance she had filed in August 2005 and the Personnel Action Report she had received in October 2005 show she was on notice that her absences were being counted against her. (Defs'
(continued...)

4

the meeting with Moody, Plaintiff provided medical documentation relating to 9 of her absences out of 44 past absences and tardies. (Defs' 56.1(a)(3) ¶ 20.) Moody did not have the authority on his own to adjust the point totals, so he submitted Plaintiff's documents to the Labor Relations Department. (*Id.* ¶¶ 20-21.) Because the record does not reflect what, if any, action the Labor Relations Department took next, the court assumes that points were in fact improperly assessed for 9 of Plaintiff's 44 absences and tardies prior to May 2006.

One month after Plaintiff's meeting with Moody, the Court Clerk adopted a new policy to combat absenteeism and tardiness: effective June 30, 2006, any employee with more than 80 accumulated points who could not provide documentation of a bona fide emergency would be disciplined immediately. (Defs' Ex. 14.) Additionally, employees with accumulated point totals ranging from 25 to 79 points would be placed on "proof status," meaning that any future absence or tardy would result in "immediate and severe discipline, up to and including termination." (*Id.*) Employees on "proof status" were to receive specific individual notices of their point totals and warnings of the potential disciplinary actions for any future incidents. (*Id.*) On July 13, 2006, Plaintiff was given such a notice. It stated that, based on her point total of 79, she was being placed on "proof status," and that any future absence or tardy without documentation of a bona fide emergency would result in immediate termination. (Defs' 56.1(a)(3) ¶¶ 26-27; Defs' Ex. 15.) A signature page in the record shows that Plaintiff received the notice. (Defs' Ex. 15.) It is unclear from the record whether Plaintiff challenged the point total asserted, but it appears that even if all of the 9 absences for which Plaintiff furnished documentation to Moody are removed from her record, her point total falls easily within the 25 to 79 point range for "proof status."

Plaintiff continued to seek FMLA leave, submitting requests for such leave in July, August, and September of 2006. (Pl's 56.1(b)(3)(C) ¶¶ 44-45.) Each request was denied about one month

---

[3](...continued)
Response to Pl's 56.1(b)(3)(C) ¶ 40.) The dispute is ultimately immaterial to the court's ruling.

after it was made for the same reason: Plaintiff had not accrued the required 1250 hours. (*Id.* ¶¶ 44-46; Defs' 56.1(a)(3) ¶ 28.) Plaintiff testified, though, that in July, Etolue, the Benefits Coordinator, had led her to believe that she had in fact accrued enough hours. (Murphy Dep., Pl's Ex. 3, at 29-31.) The October 2006 letter denying Plaintiff's last request stated that the denial was based on insufficient hours worked, but the copy of Plaintiff's application in the record contains the following handwritten notation by an unknown Court Clerk employee: "questionable HCP (employee forged doct cert.) Send denial letter." (Pl's 56.1(b)(3)(C) ¶ 47; Defs' Ex. 17, at 7.) The court assumes that HCP stands for health-care provider and that the notation shows a belief on the part of the person who wrote the note that Plaintiff forged her doctor's signature; nothing in the record clarifies the notation. Plaintiff applied for FMLA leave yet again on October 30, 2006, and on December 15, 2006, the Court Clerk finally granted her request. (Pl's 56.1(b)(3)(C) ¶ 48.) Plaintiff was granted intermittent FMLA leave with a retroactive start date of October 30, 2006 to run for one year. (*Id.*) The letter granting Plaintiff's leave request instructed her as follows:

> Your FMLA request for <u>your serious health condition</u> has been approved. **Your intermittent leave commenced October 30, 2006 and will end October 30, 2007** or earlier if the allowable total of 420 hours expires. You are required to call in to your department and advise of your intension [sic] to take your leave.
>
> <u>Please be advised that your Intermittent FMLA Leave is intended to be used ONLY in connection with the condition stated on your FMLA application</u>. It is not available for personal time or a short-term illness, which is not a serious health condition as defined in the FMLA.
> **A schedule of your FMLA leave time is requested if you have <u>pre-scheduled</u> appointments.** Your obligation under the FMLA is to try to schedule appointments so as to minimize the disruption of office operations.
>
> **You are encouraged** to use your FMLA time in increments of no less than ½ day increments. However, you may use it in smaller increments if needed for FMLA purposes. Notify your Chief Deputy Clerk who will call Labor Relations for approval.

(Defs' Ex. 18) (emphasis in original.)

Despite the grant of Plaintiff's FMLA request, she was terminated on January 3, 2007 for violating the Court Clerk's absence policy. (Pl's 56.1(b)(3)(C) ¶ 52.) A termination letter explained

that Plaintiff's point total was 58 and that, since the warning letter of July 13, 2006 had placed her on "proof status," she had failed to provide excuses for 10 tardies, 5 half-day absences, and 1 full-day absence. (Pl's Ex. 14.) The letter explained that, based on Plaintiff's FMLA leave, points had been waived for 3 absences, all of which occurred after December 15, the date on which Plaintiff's FMLA application was granted. (*Id.*) The letter acknowledged that Plaintiff's FMLA leave had the earlier retroactive start date of October 30, but nevertheless listed, among the unexcused infractions, 6 tardies, 1 half-day absence, and 1 full-day absence on dates from November 15 through December 18. (*Id.*) Those 8 infractions represent half of the 16 total infractions listed in the letter. (*Id.*)

How Defendants treated the absences and tardies incurred during Plaintiff's intermittent FMLA leave and how they should have treated those infractions are both disputed facts. Defendants admit that the absences Plaintiff incurred after October 30, 2006 were not counted against her, though her tardies were. (Pl's 56.1(b)(3)(C) ¶¶ 49-50; Defs' Response to Pl's 56.1(b)(3)(C) ¶ 49-50.) This admission is inconsistent with the language of the termination letter, however. (Pl's Ex. 14.) Contrary to the testimony of Karen Louder, the Timekeeper, that she had retroactively adjusted to FMLA time Plaintiff's full-day absence of November 17, 2006 and her half-day absence of December 7, 2006, her absences on those dates are listed as unexcused in Plaintiff's termination letter. (*Id.*; Defs' 56.1(a)(3) ¶ 34.) Based on Louder's testimony and Defendants' own admission, it is undisputed that those absences should have been waived.

Whether the tardies should also have been waived is a disputed issue, as well. First, it is not clear how the Court Clerk formally treated tardies. Louder testified that she believed that intermittent FMLA leave was not available when an employee was absent for less than one-half day, and that the Court Clerk's Labor Relations Department had made that decision. (Pl's 56.1(b)(3)(C) ¶ 51; Defs' Ex. 22, at 97.) Louder's testimony does not identify who within the Department made the decision or how the decision was communicated. The letter granting

Plaintiff's FMLA leave suggests that Louder was mistaken: it informed Plaintiff that she was encouraged to use her leave for increments of no less than one-half day, but that leave could be taken "in smaller increments if needed for FMLA purposes." (Defs' Ex. 18.) In addition, Hollis Healy, the Chief Deputy Clerk of Labor Relations testified that points were *not* incurred when an employee on intermittent FMLA leave was tardy. (Defs' Ex. 13, at 26.)

Beyond the uncertainty of whether tardies should have incurred points is another dispute over whether Plaintiff properly alerted the Timekeeper when she was tardy. The letter granting Plaintiff's FMLA request informed her that she was required to use the Court Clerk's call-in procedure whenever she needed to use her leave time. (Defs' Ex. 18.) The Timekeeper's records, and testimony from employees who took timekeeper calls, suggest that Plaintiff did not call on the six mornings when she was tardy after October 30, 2006. (Defs' 56.1(a)(3) ¶ 35.) Plaintiff testified, however, that she did call. (Pl's Response to Defs' 56.1(a)(3) ¶ 35; Pl's 56.1(b)(3)(C) ¶ 24; Murphy Dep., Pl's Ex. 3, at 39.) Defendants object that Plaintiff's testimony cannot be credited because it is "conclusory." (Defs' Response to Pl's 56.1(b)(3)(C) ¶ 24.) The objection is overruled; Plaintiff's testimony is nothing like a conclusory allegation in a complaint. *See Scaife v. Cook County*, 446 F.3d 735, 740 (7th Cir. 2006) (affidavit repeating "broad-brushed, conclusory allegations" more appropriate for a complaint was insufficient to create disputed issue of material fact). Plaintiff's testimony is admissible because whether she did or did not call her employer on a handful of days is direct testimony on a relevant fact about which Plaintiff obviously has personal knowledge. *See* FED. R. EVID. 602. Thus, whether the six tardies that Plaintiff incurred after her FMLA leave began should have been excused is a disputed issue of fact.

After her termination, Plaintiff sued Defendants, alleging, in Count I, that they had unlawfully denied her August 2006 application for FMLA leave because, by then, she had met the hours requirement. (Compl., at 6-7.) In Count II, Plaintiff alleges that her termination violated the FMLA because it was based on absences and tardies that should have been excused as FMLA leave.

(*Id.* at 8-9.) And in Count III, Plaintiff alleges that she was terminated in retaliation for exercising her FMLA rights. (*Id.* at 9-10.) Defendants move for summary judgment on all counts.

## ANALYSIS

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party, who must go beyond mere allegations and "set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). "On a motion for summary judgment, the district court must construe all facts and draw all reasonable inferences in favor of the non-movant." *Srail v. Village of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

### A.     Count I—Denial of Plaintiff's August 2006 FMLA Application

Defendants' argument for summary judgment on Count I is that the denial of Plaintiff's August 2006 FMLA application was proper because Plaintiff had not worked enough hours to qualify for FMLA leave. (Defs' Br. at 8.) Plaintiff did not address Defendants' motion with respect to Count I, so she has waived any argument in support of this Count. *Laborers' Int'l Union of North America v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999). In any event, Plaintiff has not presented evidence that, in August 2006, she had the hours to be eligible for FMLA leave under 29 U.S.C. § 2611(2)(A)(ii). Defendants' motion for summary judgment must be granted on this Count because Plaintiff has the burden of showing her eligibility for FMLA leave. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 908 (7th Cir. 2008).

### B.     Count II—Termination in Violation of the FMLA

Defendants next argue for summary judgment on Plaintiff's claim that her termination violated the FMLA, asserting that the termination was proper irrespective of Plaintiff's FMLA status. (Defs' Br. at 8-9.) "A claim under the FMLA for wrongful termination can be brought under either

9

a discrimination/retaliation or interference/entitlement theory." *Kauffman v. Federal Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). Count II raises the second type of claim: Plaintiff alleges that Defendants interfered with her FMLA rights by terminating her for absences and tardies that were covered by her FMLA leave. (Compl., at 8-9.) Such a claim was successful in *Kauffman* where it was undisputed that the employee was terminated for certain absences that should have been excused under the FMLA. Plaintiff here has presented similar evidence. First, Defendants do not dispute that the absences Plaintiff incurred after October 30, 2006 should not have been counted against her.[4] (Defs' Response to Pl's 56.1(b)(3)(C) ¶ 49.) Defendants do dispute Plaintiff's position that her tardies should not have been counted against her, but as explained above, based on Plaintiff's testimony that she complied with the Court Clerk's call-in procedure every time she was tardy, how Plaintiff's tardies should have been counted is a disputed question of fact. Construing all the facts in Plaintiff's favor, as the court must on a motion for summary judgment, 8 of the 16 infractions listed in Plaintiff's termination letter should not have been counted against her. *See Turner v. Health Care Service Corp.*, No. 06 C 2399, 2009 WL 1210624, at *15 (N.D. Ill. May 4, 2009) (denying employer's motion for summary judgment based on factual dispute over whether employee on intermittent FMLA properly used employee's call-in procedure to provide notification about absences for which employee was terminated).

Defendants next argue that even if Plaintiff did comply with the Court Clerk's call-in procedure, the tardies should not have been excused because they were not covered by the certification submitted by Plaintiff's doctor in support of her FMLA application. (Defs' Br., at 12-13.) The Secretary of Labor's regulations require that, in addition to establishing the medical necessity of leave, an employee requesting intermittent leave must also submit "an estimate of the frequency

---

[4] In their Memorandum in Support of their Motion for Summary Judgment, Defendants state that Plaintiff did not provide notice of her half-day absence on December 7, 2006, but that statement is contradicted by Defendants' own Statement of Undisputed Facts. (Def's Br., at 12; Defs' 56.1(a)(3) ¶ 34.)

10

and duration of the episodes of incapacity." 29 C.F.R. § 825.306(a)(7). According to Defendants, they were not on notice that Plaintiff might need to report to work late on occasion because the doctor's certification stated only the following: "Occasionally pain is so severe that patient has to take off from work." (Defs' Ex. 18, at 7.) This argument is insufficient to support summary judgment; Defendants have not explained how being a few minutes late to work is inconsistent with having to "take off from work." Moreover, the letter Defendants gave to Plaintiff granting her request for intermittent FMLA shows that Defendants anticipated that the leave would cover tardies. It states: "**You are encouraged** to use your FMLA time in increments of no less than ½ day increments. However, you may use it in smaller increments if needed for FMLA purposes." (Defs' Ex. 18, at 1) (emphasis in original.)

Defendants also suggest that, as a general matter, intermittent FMLA leave cannot be used to cover tardies. (Defs' Br., at 14.) For this argument, and throughout their brief, Defendants rely heavily on *Brown v. Eastern Maine Medical Center*, 514 F. Supp. 2d 104 (D. Me. 2007), at times reproducing language from that opinion without attribution. The court in *Brown* held that intermittent FMLA leave could not cover an employee's chronic lateness caused by a connective tissue disorder diagnosed after the employee was terminated. *Id.* at 110-11. The court's opinion has some relevance to the question of when tardiness can be covered by intermittent FMLA leave, but at bottom, the court's ruling was that the employee "had not demonstrated a medical need to take small increments of leave." *Agbejimi v. Advocate Health and Hospitals Corp.*, No. 08 C 2754, 2009 WL 2589129, at *5 (N.D. Ill. Apr. 19, 2009) (discussing *Brown*). In this case, in contrast, Defendants expressly permitted Plaintiff to use her intermittent FMLA leave for small increments of leave, for medical reasons that arose long before her request for leave. Defendants gave Plaintiff a procedure to follow when she needed to use that leave–calling in–and she testified that she followed the procedure. To the extent that *Brown* disapproves the use of intermittent FMLA leave to cover lateness in appropriate circumstances, the court respectfully disagrees. As Judge

Darrah explained in *Agbejimi*, "it is clear that the FMLA covers absences of short duration that occur with little or no notice." *Agbejimi*, 2009 WL 2589129, at *5 (*citing* 29 C.F.R. §§ 825.202, 825.205); *see also Hite v. Vermeer Mfg. Co.,* 446 F.3d 858 (8th Cir. 2006) (affirming jury verdict that employee was terminated in retaliation for exercising FMLA rights, including using intermittent FMLA leave to arrive 15 or 30 minutes late to work).

The only remaining argument that Plaintiff was not terminated based on absences and tardies covered by her FMLA leave is Defendants' contention that Plaintiff would have been fired even if none of those absences or tardies were considered. (Defs' Br. at 8-9.) This argument has some traction: Plaintiff herself acknowledges that setting aside all absences and tardies incurred after her FMLA leave began would reduce her point total from 58 to 49, still well above the 25 points needed for termination under the Court Clerk's attendance policy. (Pl's Br. at 11.) Moreover, Plaintiff had been placed on "proof status" in July 2006; she was on notice that after that date she could be terminated for *any* unexcused absence or tardy. (Defs' Ex. 15.) The fact remains, though, that Plaintiff was not fired after accruing four tardies and four half-day absences between July 2006 and October 2006. She was fired only after accruing more absences and tardies over the course of two months; absences and tardies that, for purposes of summary judgment, the court assumes were covered by her FMLA leave. Thus, Plaintiff has presented sufficient evidence from which a jury could find that she was terminated for absences and tardies that were covered by the FMLA.

### C.     Count III—Retaliatory Discharge in Violation of the FMLA

Defendants' argument for summary judgment on Plaintiff's retaliation claim is, again, that Plaintiff would have been fired even if she had never applied for FMLA leave. (Defs' Br. at 15.) Plaintiff has made only a cursory response. (Pl's Br. at 14.) Invoking the direct method of proving retaliation, she contends that the evidence establishes a causal connection between her FMLA request and her termination. *Daugherty v. Wabash Center, Inc.*, 577 F.3d 747, 751 (7th Cir. 2009). The *only* evidence that Plaintiff points to, however, is a Personnel Action Report produced two

weeks after she was terminated. (Pl's Br. at 14; Pl's Ex. 2.) That report seems to include absences and tardies that should not have been counted against Plaintiff based on her FMLA leave, so it might support the interference claim, which requires only a showing that Plaintiff was denied FMLA rights to which she was entitled. *Kauffman*, 426 F.3d at 884. To prove retaliation under the direct method, though, Plaintiff must show intentional discrimination. *Daugherty*, 577 F.3d at 751. On its own, the report is not sufficient to support a finding in her favor on this issue. There is no evidence about how the report was even used. Nor is the court moved by the fact that Plaintiff's termination followed the granting of her FMLA request by just three weeks. "Evidence of temporal proximity, . . . standing on its own, is insufficient to establish a causal connection for a claim of retaliation." *Mobley v. Allstate Insurance Co.*, 531 F.3d 539, 549 (7th Cir. 2008); *see also Cracco*, 559 F.3d at 633-34 (7th Cir. 2009) (finding that a lapse of several weeks between taking FMLA leave and discharge did not establish a causal connection because the employer discovered the employee's deficient work while he was on leave). Accordingly, Defendants' motion is granted on the retaliation claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [17] is granted as to Plaintiff's claim regarding to the August 2006 FMLA application and as to Plaintiff's retaliation claim. The motion is denied as to Plaintiff's interference claim.

ENTER:

Dated: March 29, 2010

_____
REBECCA R. PALLMEYER
United States District Judge

13